FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MATTHEW SHEA,

                Plaintiff,

     -vs-

SPOKANE, WASHINGTON, ZACK ZAPPONE; BETSY WILKERSON; KAREN STRATTON; and LORI KINNEAR,

                Defendants.

No.   2:25-CV-0031-JAG

ORDER DISMISSING CLAIMS 1-5 AND CLAIMS 7-9.

**ORDER GRANTED IN PART AND DENIED IN PART**
**(ECF No. 6)**

**BEFORE THE COURT** is Defendants' Motion to Dismiss. ECF No. 6. The Court has reviewed the briefing and the Complaint, ECF No. 1, and is fully informed. For the reasons detailed below, Claims 1-5 and Claims 7-9 are dismissed with prejudice.

### I.    INTRODUCTION

Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and based on immunity to all of Plaintiff's 42 U.S.C. § 1983 ("Section 1983") claims. ECF No. 6. Defendants ask the Court to dismiss Plaintiff's claims as no claim alleged is supported by facts that if proven, could support a finding in Plaintiff's favor. For the reasons stated below, the Court grants, in part, and denies, in part, Defendants' Motion to Dismiss.

### II.    BACKGROUND

Plaintiff challenges Spokane City Council Resolution 2023-0081 ("the Resolution"). The Resolution formally denounced then-Mayor Nadine Woodward's actions that "affiliated the City of Spokane and its residents with

ORDER - 1

former Washington State Representative and identified domestic terrorist, Matt Shea, and known anti-LGBTQ extremist Sean Fuecht." ECF No. 1-1. Plaintiff raises ten claims—six federal claims and four state law claims. Plaintiff claims the Resolution violates his First Amendment rights, is an unlawful bill of attainder, and violates the Washington State Constitution.

### III.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a Complaint must allege sufficient facts to raise the right to relief beyond a speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). A Complaint provides a defendant notice of the claim(s) being made and the facts a plaintiff asserts support those claims. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted). Courts need not accept as true legal conclusions "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Only a Complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss. *Id.* at 679. "The plausibility of a pleading thus derives from its well-pleaded factual allegations." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

### IV.  ANALYSIS

A.  <u>Claim 1 – Violation of the Free Exercise Clause – 42 U.S.C. § 1983:</u>

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend I. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all

ORDER - 2

religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 532 (1993).

> Distilled, Supreme Court authority sets forth three bedrock requirements of the Free Exercise Clause that the government may not transgress, absent a showing that satisfies strict scrutiny.  First, a purportedly neutral generally applicable policy may not have a mechanism for individualized exemptions.  Second, the government may not "treat ... comparable secular activity more favorably than religious exercise."  Third, the government may not act in a manner hostile to ... religious beliefs or inconsistent with the Free Exercise Clause's bar on even subtle departures from neutrality.  The failure to meet any one of these requirements subjects a governmental regulation to review under strict scrutiny.

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023).  The success of a Free Exercise claim hinges on Governmental action affecting a plaintiff in a regulatory or compulsory manner. *See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco*, 277 F.3d 1114, 1123–24 (9th Cir. 2002).

Plaintiff argues the Resolution must survive strict scrutiny because it is neither generally applicable nor neutral.  As in *Am. Fam. Ass'n, Inc.*, Plaintiff,

> overlook[s] a critical distinction, however: in this case, there is no actual 'law' at issue.  In fact, there does not appear to be any case in this circuit applying *Smith* or *Lukumi* to some non-regulatory or non-compulsory governmental action—in other words, to something other than an actual law.

277 F.3d at 1123–24.

Accordingly, based on the foregoing, Plaintiff cannot meet his burden under the Free Exercise Clause "when the challenged government action is neither regulatory, proscriptive or compulsory…" *Id.* at 1124.  Here, the Resolution enacted by the City Council criticized then-Mayor Nadine Woodward's public appearance with Plaintiff and others in strong terms.  The Resolution, however,

ORDER - 3

regulated nothing, proscribed nothing, and compelled nothing.

"[P]ublic officials may criticize practices that they would have no constitutional ability to regulate, so long as there is no actual or threatened imposition of government power or sanction." *American Family*, 277 F.3d at 1125.  In *Alameda Newspapers, Inc. v. City of Oakland*, the Ninth Circuit examined a Resolution issued by the city council in Oakland that was "in essence a declaration of principle or conscience." 95 F.3d 1406, 1414 (9th Cir. 1996).  The Oakland City council announced support for a boycott of the Oakland Tribune during a labor dispute with workers. *Id* at 1410.  The council "urged all citizen of Oakland to stop purchasing and advertising . . . until the labor dispute is successfully concluded." *Id.*  As in this case, the Oakland Resolution lacked the hallmarks of a law because the resolution was "clearly expressive in nature." *Id.* at 1414.  The Ninth Circuit compared the Oakland Resolution to one addressed in a Fifth Circuit case, finding that the Oakland Resolution did not provide for compulsory fact finding, issuance of a report, nor did the Resolution include "the official assignment of responsibility or blame for its origin and continuation." *Id.*  Consequently, the Oakland Resolution did not exercise direct coercive power with indirect coercive effect. *Id.*  In other words, the "resolution did not invoke the exercise of a governmental function—the conducting of a formal investigation and the issuance of formal findings.  In the words of the Fifth Circuit, the Oakland City Council's resolution was 'limited to editorial comment.'" *Id*, at 1414–15.

The Resolution passed by the Spokane City Council performs the same type of expressive function as the Oakland Resolution.  Upon examination of the Oakland Resolution, the Ninth Circuit concluded that, "[e]ven assuming that under some circumstances speech by a governmental agency might attain coercive power, the council resolution at issue does not constitute that type of speech. The resolution here is clearly expressive in nature.  It constitutes a declaration of

ORDER - 4

principle, rather than an exercise of governmental powers." *Id.* at 1414. The same can be said for the Resolution at issue in this case. The Spokane City Council expressed its collective opinion about Mr. Shea and then-Mayor Nadine Woodward but imposed no further sanction or consequence.

Despite Plaintiff's assertions to the contrary, Supreme Court decisions addressing the Free Exercise Clause did not expand review of government actions to instances where the government speaks for itself in a non-lawmaking capacity. Recent cases honing Free Exercise jurisprudence involve laws passed by the legislature that: (1) directly affected certain religious practice, *see Lukumi*, 508 U.S. 520 (law targeted Santeria practices to prevent worship within the town.); (2) required a person to act in a manner that conflicted with their personal religious beliefs in order to comply with the law, *see Masterpiece Cakeshop v. Colorado C.R. Comm'n,* 584 U.S. 617 (2018) (equal protection laws required a baker to decorate a cake for a same sex couple's wedding); or (3) resulted in loss of employment of a public employee, *see Kennedy v. Bremerton School District*, 597 U.S. 507 (2022) (football coach fired for engaging in open invitation prayer at midfield following public school games). The Supreme Court has yet to address whether a toothless legislative resolution aimed at the purported censuring of an executive qualifies as a governmental policy that triggers a violation of the Free Exercise Clause, but precedent addressing the Establishment Clause suggests it would not. In *Town of Greece* and *Marsh*, the Supreme Court found that prayer for the benefit of elected officials did not impinge on the Establishment Clause because the "prayer is an opportunity for [members of town boards and commissions] to show who and what they are without denying the right to dissent by those who disagree." *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 587–88 (2014).

ORDER - 5

The Resolution represents a policy statement, an instance of the government speaking for itself, rather than lawmaking because it lacks the hallmarks of a law. According to Defendant's, the Resolution "resolves" four issues: (1) criticizing Mayor Woodward for affiliating the City of Spokane with Plaintiff and others; (2) a belief in the separation of church and state and an individual's right to practice religion freely; (3) reaffirming the City Council's pledge to accept and serve all citizens of the community and eschewing fear, hatred, violence, and bigotry; and (4) an aspiration to promote belonging in the community. ECF No. 10-1. Like in the *Oakland* case, the Resolution was limited to editorial comment, specifically, comment on then-Mayor Nadine Woodward's actions as they reflect on the city of Spokane, affirmation of constitutional principles and affirmation of inclusion. The Resolution did not affect Plaintiff's religious practice, nor compel Plaintiff to act; in fact, the Resolution made no demands of any kind of Plaintiff. And, of course, Plaintiff—and anyone else—remains free to criticize the Resolution and the wisdom of promulgating the Resolution.

Plaintiff argues that the Resolution imposed punishment upon Plaintiff via condemnation of the mayor and the Resolution's expression of disapproval of Plaintiff's beliefs. "Offense, however, does not equate to coercion." *Town of Greece, N.Y. v. Galloway,* 572 U.S. 565, 589 (2014). Mere legislative expression of disapproval does not run afoul with exercise of constitutional rights without some sort of imposition of governmental power. *See, e.g., Penthouse Int'l Ltd. v. Meese,* 939 F.2d 1011, 1015–16 (D.C.Cir.1991) (public officials entitled to criticize publishers of pornography where letter contained no threat or intimation of intent to prosecute or prescribe publisher's conduct).

Ultimately, there is no set of facts Plaintiff can prove to successfully pursue his Free Exercise claim because the Resolution lacks the compulsory power of law. Therefore, the claim shall be dismissed.

ORDER - 6

B.      **Claim 2 – Violation of the Establishment Clause – 42 U.S.C. § 1983:**

"'[W]here the Establishment Clause is at issue,' the Court must 'distinguish between real threat and mere shadow.'" *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 68 (2019) (Breyer, J. joined by Kagen, J., concurring) (quoting *School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 308 (1963)).  An "Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views in a legislative forum," rather, a Plaintiff must demonstrate that the government action involves exercises legal coercion.  *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 589. "In other words, establishment at the founding involved, for example, mandatory observance or mandatory payment of taxes supporting ministers." *Cutter v. Wilkinson*, 544 U.S. 709, 729 (2005) (Thomas, J., concurring in judgment).  And "government practices that have nothing to do with creating or maintaining ... coercive state establishments" simply do not "implicate the possible liberty interest of being free from coercive state establishments." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 53 (2014) (Thomas, J., concurring in judgment).

Courts must "interpret the Establishment Clause by 'reference to historical practices and understandings.'  Going forward, 'the line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers.'"  *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) (citing *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022)). "The Framers understood an establishment "necessarily [to] involve actual legal coercion." *Newdow,* 542 U.S. at 52 (Thomas, J., concurring in judgment); *see also*, *Lee v. Weisman,* 505 U.S. 577, 640 (1992) (Scalia, J., dissenting) ("The coercion that was a hallmark of historical establishments of religion was coercion of religious orthodoxy and of financial support *by force of law and threat of*

ORDER - 7

*penalty*"). In our society, "[a]dults often encounter speech they find disagreeable; and an Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views in a legislative forum." *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 589. "Simply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." *Van Orden v. Perry*, 545 U.S. 677, 690 (2005). To establish a claim Plaintiff must prove that the Resolution exercised actual legal coercion through the threat of penalty, not merely a sense of affront. *Id.*

Plaintiff claims the Resolution "tends to establish an acceptable state religion or religious faith," "determines what is orthodox" in Spokane, and "exercised governmental power to compel religious observance," but fails to cite a single provision of the Resolution that does any of those things. ECF No. 1-1; *see also* ECF No. 9. The Resolution pledges that the Council will "accept and serve all citizens of our community, regardless of race, religion, color and sexual identity; and will never accept ideologies that promote fear, hatred, violence, and bigotry." ECF No. 10-1. The Resolution recites the Spokane City Council's collective pledge to "never accept" certain ideologies, but the Resolution does not state nor imply that members of the community were required to eschew hate, violence, and bigotry, the Resolution only states that the Spokane City Council does so and intends to serve all members of the community.

Following recent Establishment Clause jurisprudence, the Court must examine historical practices surrounding ideological Resolutions. *Boquist v. Courtney*, 32 F.4th 764, 775–76 (9th Cir. 2022). Resolutions expressing displeasure with the executive branch and on policy issues enjoy a long history. *See Houston Community College System v. Wilson,* 595 U.S. 468, 474 - 77, (2022) (Court details this history of censure of the executive by members in the context of

ORDER - 8

free speech claims.)  "Since 1800, Members of the House and Senate have introduced resolutions of censure against at least 12 sitting Presidents." <u>Resolutions to Censure the President: Procedures and History</u>, Christopher M. Davis and Jan A. Hudiburg, February 1, 2021, https://www.congress.gov/crs-product/R45087#:~:text=Since%201800%2C%20Members%20of%20the,an%20amendment%20to%20a%20resolution).  The legislative branch also may pass resolutions expressing the chambers' collective opinion about issues political issues that they have no power to enforce. *See,* e.g., H.Con.Res.9 Denouncing the horrors of socialism (2023).

      Much like the Free Exercise claim, the Resolution's lack of regulatory, proscriptive, or compulsory mandate is fatal to the Establishment Clause claim. The Resolution expresses the collective opinion of the Spokane City Council.  The Resolution purports to denounce then-Mayor Woodward and expresses the City Council's collective opinion.  Legislative bodies have passed such resolutions since the early days of the Republic to express their collective opinions whether by denouncing a president, railing against socialism, or affirming a welcoming community free of violence.  Others in the community are then free to disagree and express their disapproval of all such legislative expressions of opinion.

C. **Free Speech Claims:**

      The First Amendment provides that "Congress shall make no law…abridging the freedom of speech...."  U.S. Const. amend. I.  "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."  *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009).  A plaintiff must allege that the government action complained of burdens protected speech, whether through restricting speech, punishing speech, or chilling people from engaging in speech to state a claim under the First Amendment.  *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 890 (9th

ORDER - 9

Cir. 2022). Plaintiff alleges three claims premised on violations of the Free Speech clause: (a) retaliation, (b) compelled speech, and (c) impermissible content/ viewpoint restrictions. Notably,

> [i]f every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed.

*Keller v. State Bar of Cal.,* 496 U.S. 1, 12–13, (1990).

### 1. *Claim 3 – Retaliation – 42 U.S.C. § 1983:*

"[A]s a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022). To demonstrate retaliation, Plaintiff must plead and prove that:

> (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Plaintiff pled facts sufficient at this juncture to prove he engaged in constitutionally protected speech, satisfying the first prong.

To prove the second prong, Plaintiff must show "that the government took an adverse action in response to his speech that would not have been taken absent the retaliatory motive." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477. Plaintiff must also demonstrate the adverse action is material. *Wilson* 595 U.S. at 477. Materiality requires Plaintiff to prove a chilling consequence of the speech, "de minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim." *Boquist v. Courtney*, 32 F.4th 764, 776 (9th Cir. 2022). The Ninth Circuit has held:

ORDER - 10

> Rather, for adverse, retaliatory actions to offend the First Amendment, they must be of a nature that would stifle someone from speaking out. The most familiar adverse actions are exercises of governmental power that are regulatory, proscriptive, or compulsory in nature and have the effect of punishing someone for his or her speech.

*Blair v. Bethel Sch. Dist.*, 608 F.3d at 544 (internal citations omitted) (cleaned up).

Consequently, like in the Free Exercise and Establishment clause claims, Plaintiff must plead facts that prove the exercise of governmental power, *i.e.* the Resolution, was regulatory, proscriptive, or compulsory in nature. As discussed in the previous claims, Plaintiff cannot meet his burden. Though the Resolution purports to censure or denounce Mayor Woodward, the resolution lacks any enforcement provision. Upon examination of the historical record, the Supreme Court concluded that a "purely verbal censure" of another political representative, has never been "widely considered offensive to the First Amendment." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. at 475.

By criticizing the then-Mayor, the Resolution represents an expression of the collective opinion of the Spokane City Council—an expression of the council member's Free Speech. When government officials engage in their own expressive conduct "the Free Speech Clause has no application. The government can say what it wishes and select the views that it wants to express." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). As the Supreme Court notes:

> The First Amendment surely promises an elected representative . . . the right to speak freely on questions of government policy. But just as surely, it cannot be used as a weapon to silence other representatives seeking to do the same. The right to examine public characters and measures through free communication may be no less than the guardian of every other right. And the role that elected officials play in that process makes it all the more imperative that they be allowed to freely express themselves.

*Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (internal citations omitted).

ORDER - 11

The Court recognizes that despite the fact the Resolution directs its ire at then-Mayor Woodward, Plaintiff felt affronted by the Resolution because it passed judgment on Mayor Woodward for her association with him. Such an affront, however, represents a de minimus incursion not protected by the First Amendment.

### 2. Claim 4 – Compelled Speech – 42 U.S.C. § 1983:

"[T]he First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply misguided, and likely to cause anguish or incalculable grief." *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023). Though the government may speak for itself, the "government may not compel a person to speak its own preferred messages." *Id.* A compelled speech violation arises from "the fact that the complaining speaker's own message was affected by the speech it was forced to accommodate." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 63 (2006). In *303 Creative*, the plaintiff complained that public accommodation laws would require her to create websites, a form of speech, that did not conform with her beliefs or face assessment of a fine. *Id.* at 570. The Supreme Court also recognizes compelled silence as speech. *X Corp. v. Bonta*, 116 F.4th 888, 900 (9th Cir. 2024), *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796 (1988).

Here, Plaintiff's Complaint states that Defendants "sought and continue to seek to coercively compel certain speech," ECF No. 1-1 at ¶ 393, and "to coercively compel this speech to excise and eliminate" Plaintiff's beliefs from the public dialogue. ECF No. 1-1 at ¶ 397. Plaintiff alleges that he "faces a very real and credible threat that if he continues to practice Christianity and speak his sincerely held Christian beliefs, Defendants will continue to condemn, denounce, or punish him through additional resolutions or even greater forms of sanctions." ECF No. 1-1 at ¶ 398. The Complaint fails to include facts supporting any of these

assertions. In the briefing Plaintiff clarifies that the claims are twofold: (1) a facial challenge of the Resolution as compelled speech; and (2) as applied, Defendants sought to use the city motto to compel speech.

Censure of a third party fails to meet the legal definition of compelled speech. *See Rumsfeld,* 547 U.S. at 63.[1] Defendants gave no direction or instruction to Plaintiff regarding the content of his speech in the Resolution. The Resolution did not compel Plaintiff, or anyone else, to do anything. Unlike in *Wooley v. Maynard* where plaintiffs faced criminal sanctions if they failed to display or covered the "Live Free or Die" motto on their New Hampshire license plate, Plaintiff was not required to agree with, or tacitly approve, the motto or political views of the council members. 430 U.S. 705, 707 (1977). Neither the Resolution nor the motto imposed a sanction or penalized Plaintiff due to his speech.

**3.**     ***Claim 5 – Impermissible Content/Viewpoint Restrictions – 42 U.S.C. § 1983:***

"Generating public pressure to motivate others to change their behavior is a core part of public discourse, and we are aware of no constitutional right that requires legislators to refrain from such speech or advocacy. In fact, any such right would stand the Constitution on its head by cutting off political discourse." *Kennedy v. Warren*, 66 F.4th 1199, 1208 (9th Cir. 2023) (internal citations removed and cleaned up). Government speech runs afoul of Free Speech Content/Viewpoint restrictions when government actors exercise coercive threats

---

[1] Plaintiff appears to concede this point in the briefing, citing to no case law to support his supposition that censure of a third party qualifies as compelling speech or that criticism of his political positions that the Defendants disagreed with at a public meeting qualifies as a punishment or a sanction.

ORDER - 13

with the intent of controlling the content of speech. *Kennedy*, 66 F.4th at 1209. As the Supreme Court notes:

> To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech.

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. at 191. To establish a claim of impermissible content and viewpoint-based restrictions, Plaintiff must demonstrate that the Government coerced rather than persuaded a third-party. *Kennedy v. Warren,* 66 F.4th 1199, 1209 (9th Cir. 2023). *See also, Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. at 191. "[R]eputational injury is not itself a reason to prevent government officials from engaging in the rough and tumble of political debate." *Kennedy v. Warren*, 66 F.4th at 1206. Criticism of speech is insufficient to state a claim where there was no sanction or threat if Plaintiff continued to preach his beliefs. *Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco*, 277 F.3d 1114, 1125 (9th Cir. 2002).

Plaintiff challenges both the Resolution and the ordinance designating Spokane's motto based on content / viewpoint restrictions but fails to plead facts supporting any type of sanction, threat, or coercion. Plaintiff alleges that "Defendants' use of their actions; the enactment of the Resolution; and of Spokane City Ordinance C36403 or Spokane Municipal Cod 01.03.030 (as applied) as a basis to restrict speech discriminates based upon content and viewpoint." ECF No. 1-1, ¶ 408. This confusingly worded bare allegation contains no factual support. The briefing clarifies that Plaintiff views the "Resolution is a censure sanction" that restricts Plaintiff's viewpoint "by working to deprive him of his association and petition rights with government officials." ECF No. 9, at 19.

As discussed above, censure or denouncing a third party exercises de

ORDER - 14

minimis effect on Plaintiff's speech. Plaintiff's right to association and right to petition the Government are constitutionally protected, but not alleged as separate claims. Nor did the ordinance or Resolution curtail any of the above rights. Rather, the Resolution expressed the collective opinion of the council members, which represents expressive speech of the government which is constitutionally protected. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). Government officials may criticize so long as they do not coerce. *Kennedy v. Warren*, 66 F.4th 1199, 1211 (9th Cir. 2023).

D.    **Claim 6 –Bill of Attainder – 42 U.S.C. 1983:**

Plaintiff argues that labeling him as an "identified domestic terrorist" in a resolution censuring former Mayor Woodward equates to an unlawful Bill of Attainder. In the Complaint, Plaintiff argues the Resolution also imposes punishment as well as the threat of future punishment. ECF No. 1.1. Plaintiff asserts that "[a]s a result of Defendants' actions" and the critical description of him coupled with the denouncement in the Resolution Plaintiff "was prohibited from accessing publicly accessible areas of Spokane City Hall building." ECF No. 1-1 at 54. Further, the Resolution "provides for direct or indirect banishment of [Plaintiff] from Spokane…" *Id.* Plaintiff's Complaint also alleges in several paragraphs that Defendants "label-lynched" Plaintiff in a variety of ways. In the briefing, Plaintiff argues the censure of then-Mayor Woodward coupled with the "label-lynching" marked Plaintiff with a brand of disloyalty, infamy, or outlawdry, or a brand of opprobrium which qualifies as a form of punishment.

Three key features brand a statute a bill of attainder: (1) the statute specifies the affected person[s]; (2) the statute inflicts punishment; and (3) the statute does so without a judicial trial. *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668–69 (9th Cir. 2002). Plaintiff's Complaint clearly asserts facts supporting the first and last features of a bill of attainder: the Resolution names him

ORDER - 15

specifically and no judicial trial occurred. The Court must then determine whether the facts in the Complaint support a finding that the Resolution imposed punishment. To determine whether a bill imposes a punishment, the courts have examined: (1) traditional / historical punishments; (2) applied a functional test to determine whether a bill imposes punishment; and (3) inquired "whether the legislative record evinces a congressional intent to punish." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 478, (1977).

Punishments that have historically qualified as a bill of attainder include death, imprisonment, banishment, and/or punitive taking of personal property. *Id.* at 474. Plaintiff's Complaint alleges he has been subject to banishment.

> Banishment has traditionally been associated with deprivation of citizenship, and does more than merely restrict one's freedom to go or remain where others have the right to be: it often works a destruction of one's social, cultural, and political existence. It describes an ouster from the individual's home city, country, or territory.

*SeaRiver,* 309 F.3d at 673. According to "Black's Law Dictionary 'banishment' is defined as 'a punishment inflicted upon criminals, by compelling them to quit a city, place, or country, for a specific period of time, or for life." *United States v. Ju Toy*, 198 U.S. 253, 269–70 (1905). "[B]anishment is a punishment, and of the severest sort," *United States v. Ju Toy*, 198 U.S. 253, 273 (1905).

Though the Resolution contains no language amounting to banishment, at this stage of the pleadings, the Court cannot say that there are no facts supporting Plaintiff's claims. Plaintiff's Complaint alleges the Resolution marked a brand of opprobrium or infamy on him which he argues also qualifies as a historical punishment. Specifically, Plaintiff finds fault with the portion of the Resolution describing him as an "identified domestic terrorist." Plaintiff appears to use the term "label lynching" as a proxy for the concept of brand of infamy or opprobrium.

The Supreme Court has made clear that a formal legislative

ORDER - 16

> announcement of moral blameworthiness or punishment" is not necessary to an unlawful bill of attainder. All that is necessary is that the legislative process and the law it produces indicate a congressional purpose to behave like a court and to censure or condemn.

*Foretich v. United States*, 351 F.3d 1198, 1226 (D.C. Cir. 2003) (internal citations omitted). *Foretich* recognized that a law may be invalidated as an unlawful bill of attainder "where its effect is to mark specified persons with a brand of infamy or disloyalty." *Id.* at 1219. In *Foretich*, Congress labeled Dr. Foretich as a sex offender and stripped his parental rights in a bill, despite court proceedings consistently clearing Dr. Foretich of any abuse. *Id.* ("[S]urely deprivation of Dr. Foretich's right to be with his own daughter on the basis of a legislative determination of criminal sexual abuse also qualifies" as historical punishment for the purposes of a bill of attainder.)

The Resolution in this case declared Plaintiff to be an "identified" domestic terrorist, presupposing a legal conclusion not made in a court of law. Plaintiff argues that the Resolution tarnishes his reputation to the extent that it qualifies as punishment for the purposes of an unconstitutional bill of attainder. Reputational injury alone is sufficient for standing, and at this point of the case, a sufficient factual allegation of punishment to survive a motion to dismiss. *Foretich*, 351 F.3d at 1211. In combination with the alleged banishment, Plaintiff has pled sufficient facts to support his claim of an unlawful bill of attainder.

Applying the functional test, the Supreme Court has analyzed "whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." *Id.* at 475 – 76. Although "the severity of a sanction is not determinative of its character as punishment," *Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*, 468 U.S. 841, 851–52 (1984), if the legislative act "furthers a nonpunitive legislative purpose, it is not a bill of attainder." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d

662, 674 (9th Cir. 2002). As discussed above the Resolution served the purpose of sharing the collective opinion of the Spokane City Council and censured then-Mayor Woodward. The Resolution imposes no direct burden on Plaintiff. The Resolution tells him to do nothing, it restricts nothing, and requires nothing of him.

Lastly, the Court examines the record to evince legislative intent to determine whether the Council intended to impose a punishment on Plaintiff. As discussed above, the facts contained in Plaintiff's Complaint outlining the legislative history of the Resolution clearly illustrates the nonpunitive motive of expressing the collective opinion of the city council that anti-LGBTQ rhetoric is antithetical to the welcoming inclusive motto of the city. However, as outlined in the Complaint, the legislative history also illustrates that certain council members strongly disagreed with Plaintiff, particularly his anti-government actions.

Accordingly, at this stage of the proceedings, the Complaint has alleged sufficient facts to survive a motion to dismiss.

  E. **Claims 7 through 10 – State Law Claims:**

"Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without the aid of augmentative legislation." *Blinka v. Washington State Bar Ass'n*, 109 Wash. App. 575, 591 (2001). Plaintiff tacitly acknowledges this point but asks the Court to certify the question to the Washington State Supreme Court. The Court declines the invitation. As no cause of action exists, the state constitutional law claims are dismissed with prejudice.

  F. **Defenses:**

Defendants pose two potential shields from liability, qualified immunity and legislative immunity. At this juncture, the Court requires further development of the factual record determine whether one or both defenses apply. The Court reserves decision on applicability of these defenses.

ORDER - 18

## V. CONCLUSION

Plaintiff's Complaint fails to state any First Amendment claim or state constitutional claim. Therefore, those claims, Claims 1-5 and Claims 7-10, are dismissed with prejudice. The facts stated in the Complaint are sufficient to survive Defendant's motion to dismiss the claim of unlawful bill of attainder at this stage of the proceedings. The claim seeking declaratory judgment is partially premised on the bill of attainder claim and shall also remain pending. The Court defers ruling on the immunity defenses until further factual inquiry occurs.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss for Failure to State a Claim, **ECF No. 6,** is **GRANTED, in part, DENIED, in part:**

    a. The Court **GRANTS** Defendants' motion to dismiss Claims 1-5 and Claims 7–9 and those Claims are **DISMISSED WITH PREJUDICE**.

    b. The Court **DENIES** Defendant's motion to dismiss Claim 6.

2. Defendant's Motion to Consolidate Cases, **ECF No. 8**, is **DENIED AS MOOT**.

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide copies to counsel.

DATED September 30, 2025.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 19